And that leads to our final case this morning, No. 2411-12, U.S. Well Services v. Stewart. Okay, Mr. Dowd. Good morning, Judge Dyke. Good morning, Your Honors. May it please the Court. The patent intervention here is directed to a hydraulic fracturing system or module. There are a few issues, if I may. I'd like to start with the Board's error with respect to amended claims with the limitation of perpendicular. With respect to that, I think our main argument essentially is that the Board committed legal error on two points. One was the Board's position that the photographs that were in the provisional application weren't incorporated by reference. Can I ask you about that? Yes. I'm looking at page 10 of your reply brief where it says, and I'm quoting you, the Board erroneously asserted for the first time in the final written decision that, quote, considering the photographs in the 306 application would violate 35 U.S. Code 316.2.3 by introducing new matter, end quote. And then that's the end of your quote. So I read that, and I think that the Board said that because you said the Board said this, and then you have a quote. But I go and look at that page of the appendix, and that is not from that page. That wasn't anywhere in the Board's final written decision at all. The Board never said that, and the Board didn't do that, right? I'm sorry. Are you on the first paragraph on page 10? I am. Considering the photographs in the 306 application. May I get the joint appendix? Yes. And if. I see that we cite page appendix 14. That might have been a miscitation to the record. I can represent you that the Board didn't say that anywhere in its decision. Do you have any reasons about that? Standing here right now, no, Judge Hall. And so if that was an error. My understanding was that the Board's position was that the provisional application wasn't incorporated by reference into the patent at issue. And that's the point that we were trying to make. And if that was incorrectly worded, I apologize. Maybe it was by AI, no? No, Judge Dyke, no it was not. I can represent that for certain. Let me ask you then about another one that I found in the opening brief at page 43. We say. The specification expressly discusses two of the general arrangements, parallel and oblique, and goes on to recognize that, quote, changing the orientations of the axes of the heurical coils can have various effects. And the orientation chosen will be for a particular design goal for the system. So I read that sentence and I think that that's what the specification expressly says. But isn't it true that that statement is nowhere in the specification of the patent or the application or any other patent or application in the record? The quoted text, Your Honor? Yes. I believe that is in the, it's citing Appendix 4325, which is part of the provisional application at issue. All right. So. Why don't you read that? And if that was. So for that part of the brief, we're referring to Paragraph 27 on 4325. And Paragraph 27 is talking about Figure 7, where it says it should be pointed out that examples of the cable coil assembly 104 exists wherein an axis of the helix of the coil 106 is oriented at angles that vary from an axis of the associated piping supported by. Is that both in the application? I believe it is, Your Honor. And if it is not, then I apologize, Judge Hall. But again, the point that we're trying to make here is that, and going back to my original point, is that the photographs were incorporated by reference. And that was the main error that we were pointing out. Beyond the photographs, with respect to the perpendicular limitation, we're relying on the drawings. And there's no dispute in terms of the drawings and what they depict. And in particular, and this is at 4325, so when we're looking at 4325, Figure 7 is referenced in that paragraph. And at 4347 is Figure 7. And that shows the coils, all three coils parallel. And the point of that particular paragraph is it is necessarily describing that the orientation in the other figure shows that the coils are perpendicular. And that's really the ultimate point that we're making. And so with respect to these amended claims, I don't think there should be any question that there is sufficient written description support for the perpendicular limitation. And in our briefs, we do explicate the case law that we rely on. The Board and Halliburton rely only on one case, the Source Vagabond case. And we don't think that that case really diminishes our position. Because when you look at the case law with respect to reliance on drawings, in terms of supporting... How would we know that a person of ordinary skill would think that those angles are specifically perpendicular rather than 95 degrees or some other degree? Well, so two reasons, Jess Cunningham. One, you just look at them and they show that they're perpendicular. The Board relied on speculation in terms of saying, well, it could have been something else, it could have been something else. The second is that our position is that the Board used an overly strict written description standard. It has to reasonably convey. It doesn't have to do it with absolute certainty. And then the third, and I think this is the most important point in response to your question, Jess Cunningham, is that when you look at paragraph 27 at 4325, again pointing to that sentence, it should be pointed out that examples of the cable coil assembly 104 exists wherein an axis of the helix of the coil is oriented at angles that vary from an axis of the associated piping. So essentially, what it's saying is that figure 7 is an alternative to the typical arrangement shown in the application where the axis does not vary from the piping. And if the axis... How does showing that there's variation, per se, mean that it's perpendicular? I thought that... You're pointing me to paragraph 27 on appendix page 4325, is that right? Correct, Your Honor. And I hear the argument that you're making. I'm not saying that I don't understand or hear the argument that you're making, but I'm not sure if just from this paragraph you get that it's per se perpendicular. So maybe show me what you think is your best proof that there should be written description support with respect to this perpendicularity argument. Yes, Your Honor. And I think you have to look at it in combination with figure 6. So figure 6 is at 4346. And so figure 6 is one of the drawings that provides support, in our view, of the perpendicular configuration. And when you take the description in paragraph 27 and you combine it with the comparison of figure 7 and figure 6, what paragraph 27 is essentially stating is that the coil... And when you look at figure 6, it's the third coil from the left. That coil is essentially oriented at an axis that is the same as the piping it supports. And then when you look at figure 7, the three coils are clearly perpendicular to the piping that they support. So by implication, it means that that middle coil in figure 6 must necessarily be aligned with that piping it's supporting, and that the other two are then perpendicular. And so again, going back to our main position here, it only reasonably has to convey to one of skill in the art that these appear to be perpendicular. It doesn't have to be absolute certainty. And I will note that Halliburton's expert didn't provide any testimony on this, didn't dispute this. And it's really simply the board's speculation that it could be something else. So unless there are any further questions on that, I could turn to another issue in the case. Okay. So the second written description issue is with respect to claims 7 and 15, the original claims. And this is the question of whether there is written description support for a controller. And here we have in the provisional, the priority application, there is data showing vibrational analysis. And our expert explained that there was no reason to have that or do that vibrational analysis if you would not also have a controller that would use that data somehow with respect to the operation. That testimony, although it is short and it's concise, that testimony Compels a finding your way? Pardon me, Your Honor? Compels a finding your way? It compels a finding when you consider that it has to reasonably convey. Again, it doesn't have to be absolutely certain. It's whether there's a reasonable position that one of ordinary skill in the art would have viewed the inventors as having been in possession of the invention. So I could maybe see how you're saying the other page we looked at could reasonably convey with respect to perpendicularity. But can you point me to some specific pages of the record to support up what you're saying should be reasonably conveyed here on this written description argument? Your Honor, I can give you what's in the record. And I will acknowledge it's limited. And it's basically three things. It's the graph showing the data. It's our expert's testimony. And there's one sentence from Dr. Durham on the other side. And that's it. Your Honor, it's a confined argument. And I could understand how this particular argument with respect to written description may not be as strong as the perpendicular argument for the amended claims. But I think our main point here is that you have an expert at least providing some explanation of why a person of ordinary skill in the art would be considered to have possessed that controller, that limitation. And on the other side, you have no explanation from their expert. And then you have the board simply dismissing or discrediting our expert. And that's our main position on that, Your Honor. So it sounds like your main position is pretty dependent on what you consider to be almost silence from the other side. Is that right? Is that a key portion of your main position? It's basically silence, yes, Your Honor, but it's undisputed expert testimony. And it's undisputed expert testimony that provides a cogent explanation of why nobody in the field would simply collect the data without also using it through a controller. And again, Your Honor, to be completely candid, it's a slim record, but that's our position. And we see it at the board providing no explanation other than speculation for refuting or discrediting our expert's testimony on this. And I see that I'm in rebuttal, and unless there are further questions, I'll let you know. I have one final question. Yes, Your Honor. On page 56 of your opening brief, you make the argument that a petitioner, an appeal petitioner who claims not to understand the scope of the challenge claims to not be permitted to proceed. What doctrine is that? Your Honor, I think that's added. That's our policy view on that. We understand that we're not challenging and we cannot challenge the institution. We think that there are some fundamental policy reasons why a petitioner, if it says one thing, the institution or petitioning shouldn't be able to take a different act. But we recognize that that issue is not on appeal. We'll give you a few minutes. Thank you, Your Honor. Good morning, and may it please the Court. Mike Tyler on behalf of the United States Patent and Trademark Office. Substantial evidence supports the Board's findings as to original claims 1 through 15 being obvious, as well as substitute claims 16 through 22 being obvious. Also proposed substitute claims 23 through 30 failed to find written description support for the added limitation of perpendicularly arranging the helical coils. Why don't you focus on that? Let me start there. Actually, I'd like to start first with, I know we were looking at the application paragraph number, but I think it would aid the Court. At Appendix 147 of the 824 patent, that discussion involving Figure 7 is located at Column 8, starting at Lines 21 through 29, and to my knowledge, this is the only place in the patent that discusses any angles or orientations of... Give me that page again. Yes, sir. Yes, Your Honor. It's Appendix 147. 147. Okay. Which column? Column 8, starting at Line 21, the paragraph that begins Figure 7 shows. And then, again, the orientation being discussed here is only discussing the orientation of the helical coils to the support of the pipe that they're attached to. What the proposed amended claim is doing is talking about the specific orientation between the two helical coil sets that are separated. So, as the Board... They're finding that support in the provisional, right? So, they claim that both Figures 4 and 6 in this application, as well as the provisional, finds that support. Although the Board said that the provisional was not relevant, and I'll defend that it's not relevant here, but they went on to analyze it, and for the same reasons that they felt that Figures 4 and 6 failed to disclose this. Your Honor, the photographs are contained in the provisional. The Board made the statement, maybe a little tersely, but the reasoning is the application that was filed in response to that provisional did not maintain any disclosure about the orientation of the coils. And so, when the Board says that even if it had been carried forward to this application, we don't find it persuasive, there's an argument not of the record that it was not carried forward to this patent. And specifically, because this is being used to find written description support, it is deemed essential material, and incorporation by reference to essential material must be done only to a patent or a published patent application, not to a provisional or not embedded down the road in a patent that then incorporates another patent. The only other place in the family that discusses anything relating to orientation, again, has to do with the orientation of the helical coil to the pipe that it's being attached to. Was the argument that the photos weren't carried forward raised in the briefing before the PTAC? No, Your Honor, I do not believe Halliburton challenged the inclusion by reference point that the patent owner had made. The Board did say, and I can find the appendix site, but the Board did say they did not think it was carried forward even if it had been. But to my knowledge, Halliburton did not make that argument. So what is your response to when opposing counsel pointed us to those particular pages and made the argument essentially that if you look at these figures, admittedly they made the argument in combination with, I think, paragraph 27, that there is sufficient written description support. I think there are two problems with that. The one the Board went through, which is, as my colleague was up here at the podium doing, you have to make two assumptions based on looking at either figure four or figure six. The first assumption is that the two pipes are aligned parallel. There's nothing in the specification, nothing in the drawings that expressly or inherently requires they be parallel. You also have to make the assumption that the helical coils are set perpendicular to the pipe in order to, I guess through mathematical transverse properties, get to that the helical coils are then themselves also perpendicular. I think the second and stronger argument is there was zero expert testimony or from one of skill in the art as to why anyone in this field would make such assumptions or have any sort of certainty or clarity. And that's something else that the Board relied on is that it was only these figures and supporting attorney argument but no expert testimony as to why this would be the case or why this would inform one of skill in the art that this is inherently or expressly disclosed. I got the impression that from the briefing they were contending that reliance on these figures as opposed to explicit statements, that was part of what they thought was the problem. To the extent that Halliburton's argument can be read as trying to somehow say that figures cannot provide written description support, we would not agree with that. Of course figures can. But there are lines of cases, and we do think that this is closer to power oasis, is we're not talking about relative that there are coils separated from each other or that one's above or below another. This is a specific and a particular angle that they're trying to claim. It's perpendicular. And I think, Judge Cunningham, you raised a good point. We don't have any expert testimony to tell us if in the field seeing this or knowing that there's a plus or five-degree variance is okay. The Board had nothing to go on. And similarly, that means that it is not expressly disclosed for sure. And there's no evidence that the Board found that it would be inherently disclosed to one of skill in the art. Well, I understand that argument is with respect to the figures. Does the same thing apply to the photographs? The Board applied the exact same reasoning on the side view and also the lack of expert testimony as to why the photographs also do not support the claim. Are the photographs ambiguous in the same way the figures are? To be quite candid, Your Honor, I think, if anything, the photographs are slightly less ambiguous because on some of them they appear to be. And again, there is no expert testimony to corroborate any of this. But to the naked eye, they appear to be sitting on a grid type of concrete fixture, which, again, if there was expert testimony saying this is why we do it and in the field it's just known that you always want to have these at right angles. But I would like to draw the Court's attention to Appendix 428, which is a patent that is part of the family, but it goes a couple of grandparents up before it was a continuation in part. And this patent, again, I apologize, Your Honors, but the patent number is 10-119-381. And although this claim is not of the record, Claim 3 of that patent is the only one of this family that U.S. Well Services had claimed any sort of relationship between objects. And that claim reads that the helical coils are disposed oblique with the axis of the pipe they're sitting on. So the only time in their family that they had claimed previously some particular orientation that was actually not perpendicular was what they were claiming. So we don't have, though, in the joint appendix the claim that you just read us, right? That's correct, Your Honor. And then can we also look at the figures while we're talking through that, I think? Or not the figures, I'm sorry, the photos. Yes, Your Honor. The photos will be starting at Appendix 464. And you'll see on 464 you can see the grid feature that I was describing before. And 471, I believe, is one which shows both the coil on the discharge and the suction lines. And again, the photo shows what it shows. And without any expert testimony, the Board was not sure how this would inform one of Skill and the Art that you are in possession of the precise perpendicular orientation of these two coils. But you did already admit that the photos are not ambiguous. Your Honor, I believe I said they are less ambiguous. I wouldn't say that they are not ambiguous because, again, these photos in the record are black and white, kind of grainy. There's no angle markers. Okay, so let me give you a scale. So if ambiguous is a 10 and not ambiguous is a zero, where are you in there? Me personally? What do you think of these photos? Where do they fit? Are they like a one? I certainly would not want to look at this photo and say that there is no way that those two coils would be perpendicular. But we're not here to show that. What we need to show is that someone of Skill and the Art looking at this photo knows either expressly or inherently that they are perpendicular. But I have confidence that they are perpendicular within 10 degrees. But, again, without any teaching in the specification, we don't know what level of tolerance would be acceptable. So for all I know, this actual photo came from a thing in the field that had an 88-degree offset on these two pieces. There's just no evidence in the record on that point. Is there any more on perpendicular I'd like to look at? Turning back to the only other argument that was raised by my colleague was with respect to Claims 7 and 15. And here again the board found that, in this case, the provisional application did not support the controller limitation. And it's not that the board didn't credit their expert at all. In fact, the board said, this graph evidences that transducers were used. And obviously something had to read that electrical signal. But it's quite a leap to go from that to what the claim requires. And specifically, Claim 7 requires that a controller uses vibration data to monitor and or adjust control commands of the system. Nothing in that graph teaches anyone about control commands or what the control commands of this invention would be. And so I think that's where there was a gap for the board. I think if the claim had said, a transducer to read pressure, and they saw the graph, that would probably be supported. Because one of skill in the art would know you have to have some way of reading and processing this information. Unless there are any other questions, I don't believe any other. So with that, we would ask that you affirm the board's decision.  Thank you. Okay, Mr. Dowd, you've got a couple of minutes. Thank you. Just a few points, Your Honors. I agree with my colleague that the photographs provide an even better depiction of the perpendicular nature of the coils. That's not quite what he said. I'm giving Mr. Tyler a little credit there. He said maybe it would be no more than 10 degrees off, but 10 degrees off would be fatal to you, right? So that's a really interesting point, Judge Dyke, because I think that gets into just the question of what level of specificity do you have to have for perpendicular? There's never an argument that it has to be 90.000 degrees. It's a question of what's reasonable in this context. So then going back to this emphasis about the lack of expert testimony on this, you look at the figures and you look at the photographs, and if you had to bet, just like my colleague said, he wouldn't bet that they're not perpendicular. But the perpendicularity has nothing to do with the function, right? What is the suggestion as to why it matters whether they're perpendicular or not? Why it matters? Yeah, what function does perpendicularity? Well, that's a claim limitation. I understand that, but there are claim limitations which don't mean much. Maybe this is one of those. No, I disagree on that because in the specification, it does talk about oblique and it talks about how you could change those angles with respect to the different coils, and that's going to affect the vibrational transition. Well, that's what I want to ask you about. So going to what Judge Dyke said, your argument seems to be, well, we disclosed that you could change the angles, and then you argue in your brief, well, and you would understand that things can only be either parallel or perpendicular or something in between, so we must have considered perpendicular. And then your argument for that is so that if we give you that, then your argument is going to be, and the reason why the invention isn't obvious is because it's perpendicular. That's what we discovered. It seems very strange. It's a curious argument to make. Well, Judge Hall, what I'm asking is an opportunity to go back to the board to explain why this particular configuration is non-obvious. That's what we didn't have here. And in the briefing, Halliburton agreed that if there's written description support for this limitation based on the photographs and based on the drawings, then it should be remanded. And that's what we're asking for, Your Honor. And I understand your position in terms of there might be some question about the obviousness, but the issue before the court was whether simply whether there's written description support, whether it would reasonably convey, when you look at those figures, when they reasonably convey whether they look to be perpendicular or not. And we submit that they do. Okay. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning. Thank you, Your Honor.